**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **CHAD ROKOVITZ,** individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br><br>*v.*<br><br>**CENTURY HEALTH AND LIFE LLC**, a Florida limited liability company,<br><br>   *Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Chad Rokovitz ("Plaintiff" or "Rokovitz") brings this Class Action Complaint and Demand for Jury Trial against Defendant Century Health and Life LLC, ("Defendant" or "Century Health") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitation Act ("FTSA") by making telemarketing calls after the consumer specifically requested that Defendant stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.  Plaintiff Chad Rokovitz is a resident of Denver, Colorado.

2.  Defendant Century Health and Life LLC is a Florida limited liability company with its principal place of business in Boca Raton, Florida. Defendant Century Health conducts business throughout this District, Florida, and the U.S.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the Florida Telephone Solicitation Act by ("FTSA") claims, as they arise out of the same telemarketing campaign as the TCPA claim.

4.      This Court has personal jurisdiction over the Defendant and the venue is proper under 28 U.S.C. § 1391(b) because the Defendant resides in this District.

## INTRODUCTION

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

7.      According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in August 2022 alone, at a rate of 144.4 million calls per day. www.robocallindex.com (last visited September 13, 2022).

8.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

9.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

10.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

11.     Defendant Century Health sells health insurance plans to consumers throughout the U.S.[3]

12.     Defendant Century Health places outbound telemarketing calls to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are registered on the DNC, to solicit their services to assist the consumers in choosing health insurance options.

### CENTURY HEALTH AND LIFE OPERATES USING THE D/B/A "HEALTH ENROLLMENT CENTER" IN ORDER TO AVOID LIABILITY FOR ITS UNLAWFUL TELEMARKETING PRACTICES

13.     Defendant Century Health and Life operates using a variety of different names including "Health Enrollment Center," like the one Plaintiff heard when he was called.

14.     This practice of creating new aliases and new companies to avoid TCPA liability was documented by the FCC in one of their reports in which they named Defendant Century Health and Life as one company that is being used to telemarket to consumers.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/century-health-and-life/about/

### 3. Piercing the Corporate Veil Serves Important Policy Goals.

44.      Piercing the corporate veil is necessary to hold Mr. Robbins and his businesses accountable for his apparently unlawful robocalling activities.  Mr. Robbins has demonstrated that he can and will quickly form a new business entity when an existing entity is sued; he has done so at least twice before.  After National Health Agents was sued for TCPA violations,[112] Mr. Robbins quickly incorporated Interstate Brokers.[113]  When Interstate Brokers was sued in October 2020,[114]  Mr. Robbins soon formed a new company, Century Health and Life, which sells health insurance on a website that is similar to [4]

15.      In the aforementioned notice, the FCC also shows that "Health Enrollment Center" is one such alias that the telemarketers use to sell health insurance plans, and which is used to hide their true identity for liability purposes.

[28] *See* recorded voicemails (on file in EB-TCD-18-00030995) ("Hi this is Ashley with the health enrollment center. I am just following up regarding your health insurance quote.  Many states opened enrollment options to combat the COVID-19 virus and our plans include telemedicine services that would allow you to see a doctor over the phone or video that could treat common sicknesses like the cold and flu. Give me a call back at our phone number it is {[
          ]} and I can go over what is still available in your area. Thank you."). [5]

16.      Plaintiff Rokovitz feigned interest in a health insurance plan from Defendant Century Health in order to finally find out which company was incessantly calling him, since the companies identified as "Health Enrollment Center" and ignored his multiple requests for the calls to stop.

17.      Steven Teiberis, a Century Health employee solicited a health insurance plan to the plaintiff on one of the calls which is how the plaintiff was able to finally identify the real company behind the "Health Enrollment Center" calls.

---

[4] https://docs.fcc.gov/public/attachments/FCC-22-16A1.pdf - Page 17
[5] *Id.* – Page 5

**Agent Information**

**Selling Agent/Agent of Record**
CHL - Steven Teiberis
**Selling Agency**
Century Health and Life LLC
**Phone:**
(888) 498-1739
**Email**
licensing@centuryagents.com [6]

18.     The LinkedIn profile for Teiberis shows that he was employed by "Health Enrollment Center" from May 2020 to August 2022, and started with Defendant Century Health and Life in July of 2022:



19.     The Utah state registry for health insurance agents shows that Teiberis was licensed on December 5, 2020, under Century Health and Life, showing that "Health Enrollment Center" is a d/b/a of Century Health and Life:

---

[6] Quote that was texted to Plaintiff - https://www.1enrollment.com/sig/?a=17A93964-51CA-4702-AE6A-3CF6C6DB0275
[7] https://www.linkedin.com/in/steven-teiberis-b88295102/

Name:

TEIBERIS, STEVEN MICHAEL

Address:

3020 N MILITARY TRL STE 275 BOCA RATON, FL 33431-1807

Business Phone:

(888) 498-1739

Internet:

Email:     **Century Health and Life LLC**

Compliance@Centuryagents.Com

Status:

Active

Issue Date:

Dec 05, 2020                                                         [8]

20.     There are hundreds, if not thousands of consumer complaints posted online regarding telemarketing calls from Defendant Century Health and its sister companies using names such as "Health Enrollment Center", including complaints about unsolicited calls to phone numbers registered on the DNC, calls placed after even after making multiple stop requests, and robocalls, for instance.

- "They call even after you ask them no to. They call 5 to 7 times a day. I just want them to remove me from their call list."[9]

- "Talked to a rep who collected basic info and then forwarded me to a "licensed representative". Gave address of 2250 N. Federal Highway, Fort Lauderdale FL 33350 and a phone number of 877-292-****. After cutting a few jokes at each other's expense, the call ended."[10]

- "Starting four days ago, I began receiving phone calls and texts from this company that implied I was a person who asked for a health insurance quote. I explained I was not the person being called--"Gregory"--and I had not asked for a quote. I

---

[8] https://secure.utah.gov/agent-search/agentDetails.html?agent=ylpj8Av2Q6
[9] https://national-health-enrollment-center.pissedconsumer.com/complaints/RT-P.html#reviews
[10] *Id.* Note that 2250 N. Federal Highway, Fort Lauderdale, FL 33350 is one office location for Defendant Century Health & Life.

politely asked not to be called again. The calls continued for days from various numbers, and were often just a few minutes apart. Harassment."[11]

- "I received a phone call from one of your representatives and when I started to ask about who the company was she hung up on me! So damn rude!"[12]

- "to many phone calls, stop calling me, I did not fill out an application. I do not need your help or input, just leave me alone."[13]

- "same call but Ashley said she was with health enrollment center and was following up on my quote.  didn't request any quote from them.  SCAM!!!"[14]

- "I received a call from this number from Ashley. It was saved in my voice mail. When I called back, a man answered the phone. When I asked him a simple answer like give me the exact name of your company again so I can look it up. He hung up. This is a SCAM!"[15]

- "Received several calls from various numbers. Caller is always Andrew from Health Enrollment Center calling about my health options. Also always says to be added to DNC list to call 8448203800"[16]

21.    A Century Health employee posted his experience making calls and how many consumers told him to stop calling.

## Terrible company

May 24, 2022 - Sales

◯ Recommend    ◯ CEO Approval    ◯ Business Outlook

Pros
Constantly getting told off and stop calling me

Cons
They do stuff they aren't legally allowed to do.
A lot of other companies pay more

Advice to Management
Get a new job[17]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] https://800notes.com/Phone.aspx/1-888-303-1182
[15] *Id.*
[16] https://800notes.com/Phone.aspx/1-844-790-1700
[17] https://www.glassdoor.com/Reviews/Century-Health-and-Life-Reviews-E5019983.htm

22.     In response to these calls, Plaintiff Rokovitz brings this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act and the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

### PLAINTIFF ROKOVITZ'S ALLEGATIONS

23.     Plaintiff Rokovitz is the subscriber and the sole user of the cell phone number ending with xxx-xxx-6698.

24.     Plaintiff Rokovitz registered his cell phone number on the National Do Not Call Registry on July 7, 2022.

25.     In end of June 2022, Plaintiff Rokovitz started receiving unsolicited telemarketing calls soliciting health insurance quotes to Plaintiff using the name "Health Enrollment Center."

26.     The purpose of the calls is to qualify the consumer for health insurance and then to transfer to an agent to sign up and pay for a plan.

27.     Plaintiff received a series of unsolicited telemarketing calls to his cell phone from the Defendant using the phone number 720-794-3181 on the following dates which he did not answer:

- On June 30, 2022, at 9:21 AM, 9:40 AM, 10:25 AM, 11:15 AM, 11:48 AM, 12:05 PM, 1:04 PM, 1:21 PM, 1:38 PM, 2:32 PM, 3:08 PM, and 3:30 PM;

- On July 5, 2022, at 9:25 AM, 9:57 AM, 2:03 PM, and 3:50 PM; and

- On July 6, 2022, at 11:44 AM.

28.     On July 6, 2022, at 1:30 PM, Plaintiff Rokovitz received another call on his cell phone from the same phone number 720-794-3181. Plaintiff was extremely annoyed by the unwanted calls and wanted the calls to stop. Plaintiff answered this call and found that the caller

was looking for someone named Darren. Plaintiff informed the caller that they had the wrong phone number.

29. Despite clarifying to the caller that they had the wrong phone number, Plaintiff continued to receive calls to his cell phone from this phone number 720-794-3181, including a call on July 7, 2022, at 12:19 PM.

30. On July 7, 2022, at 10:22 AM, Plaintiff received a call on his cell phone using a similar phone number as the previous calls, 720-794-3180. Plaintiff did not answer this call.

31. On July 7, 2022, at 2:58 PM, Plaintiff received another call on his cell phone using the phone number 720-794-3180. Plaintiff answered the call and noticed a slight pause before a live caller started speaking. The call was regarding health insurance and the caller was looking for someone named Darren. Plaintiff informed the caller once again, that they had the wrong number, and that Plaintiff's phone number was on the DNC.

32. On July 8, 2022, despite having made multiple stop requests, Plaintiff continued to receive calls from the same phone numbers, including calls at 9:49 AM, and 11:57 AM, from the phone number 720-794-3181, and at 12:50 PM from the phone number 720-794-3180.

33. On July 8, 2022, at 1:41 PM, Plaintiff Rokovitz received yet another call to his cell phone from the phone number 720-794-3180. Plaintiff answered this call, and the caller identified their company as Health Enrollment Center. Plaintiff informed the caller again that they had the wrong phone number and again requested that they stop calling his cell phone number.

34. On August 31, 2022, at 9:22 AM, Plaintiff Rokovitz received a call to his cell phone using the phone number 888-505-2113. Plaintiff answered the call, and the caller identified their company as Health Enrollment Center. Plaintiff disconnected the call.

35.     On calling 888-505-2113, it is answered by an employee who identifies the company as Health Enrollment Center.

36.     On August 31, 2022, at 9:27 AM, Plaintiff Rokovitz received another call to his cell phone using the phone number 720-794-3181. Plaintiff answered this call and spoke to a Defendant Century Health employee and made yet another stop request.

37.     On August 31, 2022, at 11:24 AM, Plaintiff Rokovitz received a call to his cell phone using the phone number 888-989-0173. Plaintiff answered this call, and the caller identified their company as Health Enrollment Center. Once again, Plaintiff requested the caller to stop calling his cell phone number.

38.     On calling this phone number 888-989-0173, it is answered by Defendant Century Health's employee who identify as Health Enrollment Center.

39.     On September 1, 2022, at 12:06 PM, Plaintiff received another call to his cell phone from Defendant Century Health using the phone number 888-504-2932. After so many calls and having told Defendant's employees to stop calling multiple times, Plaintiff was very frustrated. Plaintiff answered the call and spoke to a female employee of Defendant Century Health. Plaintiff feigned interest in Defendant's health insurance policy and answered Defendant's questions to try to get a quote emailed to him, so he could get confirmation on which company was responsible for the calls. Plaintiff provided a fake name, Daniel Jones, to the caller. However, Plaintiff could not provide his credit card info, and told the caller that he was trying to find out which company was responsible for the unwanted calls to Plaintiff's cell phone. The caller disconnected the call.

40.     On September 1, 2022, just a few minutes after Defendant's employee disconnected the previous call, she sent a rude text message to Plaintiff threatening Plaintiff Rokovitz that she'd put his phone number on multiple calling lists.



41.     Shortly after receiving threats from the Century Health employee, Plaintiff received a series of unsolicited phone calls and text messages from multiple moving companies.

42.     On September 1, 2022, at 1:08 PM, an hour after the above call, Plaintiff Rokovitz received another call to his cell phone from Defendant Century Health using the phone number 888-512-1914. Plaintiff answered the call and spoke to Defendant's employee Steven Teiberis. Steven identified Plaintiff as Daniel Jones, which was a fake name that Plaintiff had given to the Defendant Century Health employee on the previous call, at 12:06 PM. Plaintiff feigned interest once more and received a health insurance quote from Steven Teiberis by email.

43.     The quote clearly shows that Steven Teiberis is a Century Health employee:

**Membership Information**

September 1, 2022 at 11:12:06 PM

First Name: Daniel
Last Name: Jones
Address 1: 4686 S Raleigh St
City: Denver
State: CO
Zip: 80236
Phone: (720) 498-6698
Email: ryanmanjones420@gmail.com
DOB: 07/18/1987
Gender: M

**Agent Information**

**Selling Agent/Agent of Record**
CHL - Steven Teiberis
**Selling Agency**
Century Health and Life LLC
**Phone:**
(888) 498-1739
**Email**
licensing@centuryagents.com

**SELLING DISCLAIMER**

The agent/agency above is responsible for marketing and selling the program(s) you are enrolling in today. Please contact the agent if there is

44. On calling phone number 888-512-1914, it is answered by Defendant Century Health using the alias Health Enrollment Center.

45. Plaintiff answered multiple calls from Defendant which always began with a pause before a live agent would come onto the line, indicating the use of an autodialer to place the calls.

46. Plaintiff Rokovitz did not request health insurance quotes or information from the Defendant, and never consented to receiving telemarketing calls from or on behalf of the Defendant. Plaintiff also requested Defendant on multiple occasions, to stop calling his cell phone,

but continues to receive telemarketing calls about health insurance from Defendant Century Health.

47. Defendant used multiple spoofed phone numbers to call Plaintiff's cell phone including the phone numbers 720-794-3181 and 720-794-3180. These phone numbers are not in service and a called person is not connected to Defendant on calling these phone numbers.

48. Defendant's employees failed to identify their first and last names, and the name of Defendant's company on whose behalf the solicitation calls were placed, in multiple calls.

49. The unauthorized telephonic sales calls that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

50. Seeking redress for these injuries, Plaintiff Rokovitz, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* and the Florida Telephone Solicitation Act, Fla. Stat. 501.059, which prohibit placing unsolicited telemarketing calls to consumers who have requested not to be called, and for failure to identify the first and last name of the telephone solicitor and the name of the company on whose behalf the solicitation was made.

## CLASS ALLEGATIONS

51. Plaintiff Rokovitz brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **<u>Internal Do Not Call Class:</u>** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop.

**FTSA Stop Request Class:** All persons in the United States, who, on or after July 1, 2021, (1) Defendant (or an agent acting on behalf of the Defendant) called (2) to and/or from Florida (3) at least one time after they requested Defendant or its agent to stop calling.

**Autodial Class:** All persons in the United States, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) to and/or from Florida, (3) using the same equipment or type of equipment utilized to call Plaintiff.

**Unidentified Telephone Solicitor Class:** All persons in the United States, who, on or after July 1, 2021, (1) received an unsolicited telephonic sales call from or on behalf of the Defendant, (2) to and/or from Florida, (3) in which the solicitor failed to identify their own first and last names, and/or the name of the business on whose behalf the solicitation call was placed.

52.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Rokovitz anticipates the need to amend the Class definitions following appropriate discovery.

53.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

54.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant placed multiple calls to Plaintiff, members of the Internal Do Not Call Class, and/or members of the FTSA Stop Request Class including at least once after the person requested Defendant or their agent to stop calling;

(b)     whether Defendant used automatic dialing software to place telephonic solicitation calls to Plaintiff and members of the Autodial Class;

(c)     whether Defendant placed telemarketing calls to Plaintiff and members of the Unidentified Telephone Solicitor Class, without identifying the first and last names of the solicitor who placed the call and/or the name of Defendant's business;

(d)     whether Defendant's conduct violated the TCPA and/or FTSA; and

(e)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

55.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

56.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect

to the Classes as wholes, not on facts or law applicable only to Plaintiff Rokovitz. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rokovitz and the Internal Do Not Call Class)**

57.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference.

58.     Plaintiff brings this claim individually and on behalf of the Internal Do Not Call Class Members against Defendant.

59.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person

or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60.    Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

61.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Rokovitz and the FTSA Stop Request Class)**

63. Plaintiff repeats and realleges paragraphs 1 through 56 of this Complaint and incorporates them by reference.

64. Plaintiff brings this claim individually and on behalf of the FTSA Stop Request Class Members against Defendant.

65. The FTSA prohibits "a telephone solicitor or other person" from initiating "an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission, made by or on behalf of the seller whose goods or services are being offered." Fla. Stat. § 501.059(5)(a).

66. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

67.     In violation of the FTSA, Defendant initiated multiple outbound solicitation calls to Plaintiff, and other members of the FTSA Stop Request Class, who had previously communicated to Defendant that they did not wish to receive any solicitation calls from or on behalf of Defendant.

68.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

### THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Rokovitz and the Autodial Class)**

69.     Plaintiff repeats and realleges paragraphs 1 through 56 of this Complaint and incorporates them by reference.

70.     Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendant.

71.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

72.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

73.     Defendant failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

74.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

75.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

76.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## FOURTH CLAIM FOR RELIEF
### Violation of the Florida Telephone Solicitation Act,
### (Violations of the Fla. Stat. § 501.059)
### (On Behalf of Plaintiff Rokovitz and the Unidentified Telephone Solicitor Class)

77.     Plaintiff repeats and realleges paragraphs 1 through 56 of this Complaint and incorporates them by reference herein.

78.     Plaintiff brings this claim individually and on behalf of the Unidentified Telephone Solicitor Class Members against Defendant.

79.     The FTSA requires "any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number" to mandatorily "identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2).

80. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

81. In violation of the FTSA, Defendant, or the agents calling on their behalf, failed to identify the first and last names of the telephone solicitor and/or the name the business on whose behalf those unsolicited telephonic sales calls were made and/or caused to be made to the Plaintiff and other members of the Unidentified Telephone Solicitor Class.

82. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the FTSA;

d)   An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rokovitz requests a jury trial.

**CHAD ROKOVITZ**, individually and on behalf of all others similarly situated,

DATED this 7th day of November, 2022.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877)333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\*Lead counsel*